# In The United States Court of Federal Claims

No. 14-89T
(E-Filed:   October 14, 2015)
(Reissued: October 15, 2015)**

| | |
|---|---|
| GENERAL MILLS, INC. AND SUBSIDIARIES,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Motion to Dismiss; Rule 12(b)(1); Jurisdiction; Statute of Limitations; 26 U.S.C. § 6230(c); TEFRA; Large Corporate Underpayment Interest; Computational Adjustment |

<u>Sheri A. Dillon</u>, Washington, D.C., for plaintiffs.

<u>Bart D. Jeffress</u>, Trial Attorney, with whom were <u>Tamara W. Ashford</u>, Acting Assistant Attorney General, and <u>David I. Pincus</u>, Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for defendant.

## OPINION and ORDER

CAMPBELL-SMITH, Chief Judge

This case involves a dispute between General Mills, Inc. and its subsidiaries (GMI, plaintiff, or the corporation) and the Internal Revenue Service (IRS, government, or defendant).   Compl. ¶ 1, ECF No. 1, filed Jan. 30, 2014.   Plaintiff is the parent corporation of a number of the partners of General Mills Cereals, LLC (the partnership). <u>Id.</u>   Plaintiff alleges that after certain partnership-level examinations of the partnership were settled, the IRS erroneously collected $5,958,695 in large corporate underpayment (LCU) interest on income tax underpayments by the corporation.[1]   <u>Id.</u>   Plaintiff asserts

---

**    This reissued opinion includes both the Errata the court issued on October 14, 2015, ECF No. 36, and corrections to two typographical errors on page 17.   The court made no other changes to the opinion.

[1]    The complaint covers five tax years—from 2002 through 2006.   The background

that the IRS calculated the LCU interest using an incorrect "applicable date."   Id.
Plaintiff claims that LCU interest began to accrue earlier than it should have because the
IRS used the wrong date for its calculations.   See id.

Defendant has moved to dismiss plaintiff's complaint, alleging a lack of
jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC).
Def.'s Mot., ECF No. 12, filed Sept. 9, 2014.   Defendant asserts that plaintiff did not file
its claim challenging the alleged error within six-months of receiving the respective
notices of computational adjustment, as set forth in the Internal Revenue Code (IRC or
tax code) at 26 U.S.C § 6230(c).[2]   Id. at 1–2.   Defendant argues that because plaintiff
did not file its administrative claim within the prescribed six-month limitations period,
the court is without jurisdiction to hear it.   Id.   The court heard oral argument on
September 10, 2015.   See Transcript (Tr.), ECF No. 33, filed Sept. 17, 2015.   For the
reasons more fully addressed below, defendant's motion is **GRANTED**.

## I.      Background

### A.      TEFRA Proceedings

Before delving into the facts relevant to this dispute, the court provides a brief
overview of the impetus for, and the effect of, the Tax Equity and Fiscal Responsibility
Act of 1982 (TEFRA).   Under the tax code, partnerships, like General Mills Cereals,
LLC, are not subject to income tax.   See § 701.   Instead, the partners in the partnership
are liable in their individual capacities for income tax related to the partnership.   Id.
Prior to the enactment of TEFRA, the IRS performed an audit of each partner in a
partnership when it sought an adjustment of an item related to the partnership.   Prati v.
United States, 81 Fed. Cl. 422, 427 (2008), aff'd, 603 F.3d 1301 (Fed. Cir. 2010).   By
conducting different individual audits, "the IRS could not guarantee consistent treatment
of a partnership item for each partner in a partnership."   Id.

The enactment of TEFRA, however, created a set of unified partnership audit
procedures that reduced the burden on the IRS.   See United States v. Woods, 134 S. Ct.
557, 562–63 (2013); McNaughton v. United States, 118 Fed. Cl. 274, 277 (2014), aff'd,
612 Fed. App'x 600 (Fed. Cir. 2015).   These procedures "determine how partnership
items [are to] be reported on all partners' individual returns."   Bassing v. United States,
563 F.3d 1280, 1283 (Fed. Cir. 2009) (quoting Olson v. United States, 172 F.3d 1311,

---

section and a portion of the analysis section of the opinion contain two subsections,
specifically addressing the 2002–2003 tax years and the 2004–2006 tax years.   These
subsections correspond to periods during which the Internal Revenue Service (IRS)
reviewed plaintiff's tax liability.   The facts differ slightly between the respective
examinations and subsequent events.
[2]      All future references to the Internal Revenue Code (IRC or tax code) will be
referred to by section (§) only, omitting "26 U.S.C."

1316 (Fed. Cir. 1999)); <u>see</u> § 6222 ("A partner shall, on the partner's return, treat a partnership item in a manner which is consistent with the treatment of such partnership item on the partnership return.")   Although, each partner may participate in the IRS's examination of the partnership's return, <u>see</u> <u>Olson</u>, 172 F.3d at 1317, a partner need not do so, and "may waive this right, . . . [choosing instead to] opt out of partnership-level proceedings by entering into a binding settlement agreement with the IRS."   <u>Id.</u>   "Once the adjustments to partnership items have become final, the IRS may undertake further proceedings at the partner level to make any resulting 'computational adjustments' in the tax liability of the individual partners."   <u>Woods</u>, 134 S. Ct. at 563.   In applying the computational adjustments, the IRS may directly assess such adjustments against the partners or conduct deficiency proceedings.   <u>Id.</u>

### B.   The 2002–2003 Tax Years

Plaintiff timely filed its corporate tax returns for the 2002 and 2003 tax years, respectively, on or about February 17, 2003 and February 17, 2004.   Compl. ¶ 6.   The partnership timely filed partnership tax returns for those years as well, respectively, on or about March 17, 2003 and March 15, 2004.   <u>Id.</u> ¶ 11.

### 1.   Audits for the 2002–2003 Tax Years

On January 12, 2005, the IRS issued a Notice of Beginning of Administrative Proceedings (NBAP) with respect to the returns filed by the partnership for the 2002 and 2003 tax years.   <u>Id.</u> ¶ 13.   Issued pursuant to TEFRA provisions, the NBAP stated that the IRS would initiate a non-deficiency partnership proceeding.   <u>See id.</u>   Several months thereafter, on April 4, 2005, the IRS began its examination of plaintiff's corporate tax returns for the years 2002 and 2003.   <u>Id.</u> ¶ 8.   The examination was conducted by deficiency proceedings.   <u>Id.</u>

### 2.   IRS Communications Regarding Tax Adjustments

On June 15, 2007, nearly two years after deficiency proceedings were initiated, the IRS sent plaintiff an IRS Letter 950 and an enclosed "examination report showing proposed changes to [plaintiff's] tax[es]" for the 2002–2003 tax years.   Def.'s Mot., Ex. 1 at 1.   Both plaintiff and defendant refer to this letter and its various enclosures as a notice of proposed deficiency.   Compl. ¶ 9; Def.'s Mot. Ex. 1, Index.   The letter stated: "If you are a 'C' Corporation, Section 6621(c) of the Internal Revenue Code provides that an interest rate 2% higher than the standard rate of interest will be charged on deficiencies of $100,000 or more."[3]   Def.'s Mot., Ex. 1 at 1.   It further stated that "[i]f

---

[3]   Section 6621(c) is the tax code provision discussing the rate of large corporate underpayment (LCU) interest.   It provides:   "For purposes of determining the amount of interest payable under section 6601 on any [LCU] for periods after the applicable date, [the underpayment rate] shall be applied by substituting '5 percentage points' for '3

you pay the full amount due now, you will limit the amount of interest and penalties charged to your account."   Id.   The letter directed plaintiff to notify the IRS by July 16, 2007 as to whether or not plaintiff agreed with the changes identified in the notice.   Id.

On July 27, 2010, the IRS and plaintiff executed, by Form 870-LT(AD), a "Settlement Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax and Additional Amounts and Agreements for Affected Items."   Def.'s Mot., Ex. 4.   Part I of the settlement agreement addresses the "Offer of Settlement of Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts, and Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts."   It states in relevant part:

> The undersigned taxpayer(s) . . . also waive(s) the restrictions provided in IRC sections 6225(a) and 6213(a) and consent(s) to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to adjustments to partnership items, as set forth in the attached Schedule of Adjustments (plus any interest provided by law).

Def.'s Mot., Ex. 4 at 80 (emphasis added).   Part II of the settlement agreement addresses the "Offer of Settlement of Affected Items and Waiver of Restrictions on Assessment." It states in relevant part:

> The undersigned taxpayer(s) . . . also waive(s) the restrictions provided in IRC sections 6225(a) and 6213(a) and consent(s) to the assessment and collection of any deficiency attributable to partner level determinations, as set forth in the attached Schedule of Adjustments, plus any interest provided by law.

Id. at 81 (emphasis added).   Finally, the "Instructions for Signing [Settlement Agreement] Form 870-LT(AD)" include the following language:

> NOTE:   The submission of this offer by you and the acceptance of the offer for the Commissioner may result in an additional tax liability to you plus interest as provided by law.   If the result is a decrease in tax, the amount of the decrease will be sent to you with interest as provided by law.

Id. at 82 (emphasis added).   The plain terms of the settlement agreement contemplate an assessment of "'any' interest provided by law."

---

percentage points.'"   § 6621(c)(1).   "The applicable date is the 30th day after the earlier of" the date the first letter of proposed deficiency is sent or the date on which the deficiency notice is sent.   § 6621(c)(1)(2).

4

On August 27, 2010, the IRS sent plaintiff a cover letter with a Form 5278. Compl. ¶ 14; Def.'s Mot., Ex. 5.   The cover letter stated that "[t]he enclosed audit statement explains how the adjustments made during our examination of General Mills Cereals, LLC affect your income tax return."   Def.'s Mot., Ex. 5 at 155.   The enclosed form, a Form 5278, is titled as a "Statement – Income Tax Changes."   Id. at 156. Plaintiff refers to this cover letter and the attached Form 5278 audit statement as a notice of computational adjustment.[4]   Compl. ¶ 14.   The Form 5278 statement showed how the settlement—specifically the adjustments made during the partnership examination of partnership items—affected plaintiff's income tax liability as a partner.   Id. ¶ 15; Def.'s Mot., Ex. 5 at 155.   Among the various line items on the Form 5278 is the one for "Balance due or (Overpayment) excluding interest and penalties" and a corresponding dollar amount.   Def.'s Mot., Ex. 5 at 156.   The cover letter with the Form 5278 statement advised plaintiff that the IRS "will adjust your account and figure the interest," and that "[t]he Service Center will send a bill for any additional amount you owe."   Id. at 155.   One week later, on September 3, 2010, the IRS assessed against GMI the identified tax deficiencies plus interest (which included large corporate underpayment interest).[5]   Def.'s Mot. 5; see Def.'s Mot., Ex. 2 at 9, 20.

### 3.      Plaintiff's Payment of Taxes and Interest

On April 11, 2011, plaintiff paid additional taxes and interest (including LCU interest) for the 2002–2003 tax years.   Compl. ¶ 22.   On April 18, 2011, the IRS sent plaintiff an interest computation schedule for each of the 2002–2005 tax years.   Def.'s Mot., Ex. 6.   The accompanying cover letter stated that the schedules were "used to calculate interest on the tax adjustment for the return[s] identified above."   Id. at 157. The schedules show that for the 2002–2003 tax years, the LCU interest began to run on July 15, 2007, the thirtieth day after the IRS sent the June 15, 2007 notice of proposed deficiency.   See Compl. ¶ 9; Def.'s Mot., Ex. 1; see also § 6621(c)(2)(A) ("The applicable date is the 30th day after the earlier of -- (i) the date on which the 1st letter of proposed deficiency . . . is sent . . . .").   That LCU interest was calculated through and up to April 21, 2011.   Def.'s Mot., Ex. 6 at 158, 160.   On April 20, 2011, the IRS sent plaintiff another interest computation schedule for the 2002 tax year only.   Id. at 165– 66.   It too indicated that the LCU interest began to accrue on July 15, 2007.   Id.

### C.      The 2004–2006 Tax Years

---

[4]      The correspondence, however, does not bear that title.   Def.'s Mot., Ex. 5, ECF No. 12, filed Sept. 9, 2014.

[5]      Plaintiff makes no reference to this assessment in its complaint; plaintiff stipulated to it, however, after oral argument.   Pl.'s Notice, ECF No. 30, filed Sept. 16, 2015.

Plaintiff timely filed its corporate tax returns, as a partner, for the 2004, 2005, and 2006 tax years, respectively, on or about February 15, 2005, February 15, 2006, and February 9, 2007.   Compl. ¶ 6.   The partnership timely filed its tax returns for those years, respectively, on or about March 11, 2005, March 14, 2006, and March 13, 2007. Id. ¶ 11.

### 1.    Audits for the 2004–2006 Tax Years

On September 26, 2007, the IRS began examining plaintiff's corporate tax returns for the years 2004–2006.   Id. ¶ 26.   The examination was conducted by deficiency proceedings.   Id.   On November 14, 2007, the IRS issued a NBAP with respect to the 2004–2006 partnership tax returns.   Id. ¶ 28.   The notice, which issued pursuant to TEFRA provisions, stated that the IRS would initiate a non-deficiency partnership proceeding.   See id.

### 2.    IRS Communications Regarding Tax Adjustments

On April 29, 2009, the IRS sent plaintiff an IRS Letter 950 and enclosed an "examination report showing proposed changes to [plaintiff's] tax[es]" for the 2004–2006 tax years.   Def.'s Mot., Ex. 7 at 168.   Both plaintiff and defendant refer to this letter and its various enclosures as a notice of proposed deficiency.   Compl. ¶ 27; Def.'s Mot. Ex. 1, Index.   The letter stated:   "[i]f you are a 'C' Corporation, Section 6621(c) of the Internal Revenue Code provides that an interest rate 2% higher than the standard rate of interest will be charged on deficiencies of $100,000 or more."   Def.'s Mot., Ex. 7 at 168.   It further stated:   "[i]f you pay the full amount due now, you will limit the amount of interest and penalties charged to your account."   Id.   The letter directed plaintiff to notify the IRS by May 28, 2009 as to whether or not plaintiff agreed to the changes outlined in the notice.   Id.

On November 1, 2010, plaintiff and the IRS executed a Form 870-LT(AD), reflecting the settlement reached regarding the adjustment of certain partnership items for the 2004–2006 tax years.   Compl. ¶ 29; Def.'s Mot., Ex. 9.   The language pertaining to interest contained in Parts I and II of the form, as well as in the "Instructions for Signing [the Settlement] Form," is identical to the language included in the Form 870-LT(AD) executed on July 27, 2010 for the 2002–2003 tax years.[6]   Compare Def.'s Mot., Ex. 9 with Def.'s Mot., Ex. 4; see supra Part I.B.2.

On March 4, 2011, the IRS sent plaintiff a second IRS Letter 950, again enclosing an "examination report showing proposed changes to [plaintiff's] tax[es]," for the 2004–

---

[6]      By its own terms, the settlement agreement contemplated an assessment of "any interest provided by law."

2006 tax years.[7]   Def.'s Mot., Ex. 10 at 301–02.   The language in the second IRS
Letter 950 mirrors that of the first IRS Letter 950, sent to plaintiff nearly twenty-two
months earlier for the same tax years.   Compare id. with Def.'s Mot., Ex. 7 at 168–69.
Among the enclosures with that letter was a Form 870, which is titled as a "Waiver of
Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of
Overassessment."   Def.'s Mot., Ex. 10 at 303–04.   A representative for plaintiff signed
that form on March 10, 2011, six days after its mailing.   Id. at 303.

> The Form 870 contained the following language,

> I consent to the immediate assessment and collection of any deficiencies
> (increase in tax and penalties) and accept any overassessment (decrease in
> tax and penalties) shown above, plus any interest provided by law.   I
> understand that by signing this waiver, I will not be able to contest these
> years in the United States Tax Court, unless additional deficiencies are
> determined for these years.

Id. at 303 (emphasis added).   The Form 870 instructed:

> If you consent to the assessment of the deficiencies shown in the waiver,
> please sign and return the form in order to limit any interest charge and
> expedite the adjustment to your account.   Your consent will not prevent you
> from filing a claim for refund (after you have paid the tax) if you later believe
> you are so entitled.

Id. at 304 (emphasis added).

Also accompanying that IRS Letter 950 was a Form 4549A, titled as "Income Tax
Discrepancy Adjustments."   Id. at 305–06.   Among the line items on this form was a
dollar amount correlating to the "Balance Due or (Overpayment) . . . (Excluding interest
and penalties)."   Id. at 305.   The Form 4549A included proposed assessments for non-
partnership items as well as proposed assessments for computational adjustments
attributable to the partnership and to affected items of the partners, as determined during
the 2004–2006 non-deficiency partnership proceedings.   Compl. ¶ 32.   In addition, the
IRS included a Form CG-4549-B ("Income Tax Examination Changes"), an Appeals
Adjustments spreadsheet, and a Form 886-A ("Explanation of Items") with the IRS Letter
950, sent on March 4, 2011.   See generally Def.'s Mot., Ex. 10.

---

[7]      Defendant asserts that this mailing also served as a notice of computational
adjustment because not only did it advise plaintiff that the IRS had identified certain
deficiencies, but it provided specific information as well that would allow plaintiff to
compute the corresponding interest.   Def.'s Mot. 27.

### 3.    Plaintiff's Payment of Taxes and Interest

On April 11, 2011, plaintiff paid the additional taxes and interest (including the enhanced interest) attributable to the IRS's adjustments to the partnership items reported on the 2004–2006 partnership tax returns.    Compl. ¶ 40.    Nearly one month later, on May 9, 2011, the IRS assessed GMI with the identified deficiencies plus interest (including the LCU interest) for the 2004–2006 tax years.    Pl.'s Notice 2; Def.'s Mot. 10.    Thereafter, on June 14, 2011, the IRS provided plaintiff with the "Interest Computation Schedule" that it had used to calculate the interest on plaintiff's tax adjustments for each of the 2004–2006 tax years.    Def.'s Mot., Ex. 11 at 382–86.    The schedules showed that for those tax years, the date on which the LCU interest began to accrue was May 29, 2009, the thirtieth day after the IRS sent the April 29, 2009 letter of proposed deficiency.    See Compl. ¶ 27; Def.'s Mot., Ex. 7; see also § 6621(c)(2)(A).    The LCU interest was calculated through and up to July 4, 2011.    Def.'s Mot., Ex. 11 at 383–86.

### D.    The Filing of Refund Claims

On March 28, 2013, plaintiff filed with the IRS, for each of the tax years at issue, a Form 843 (and an attached narrative), seeking a refund and an abatement of the paid LCU interest.    Compl. ¶¶ 23–24, 41–43; Compl., Exs. A–B, D–F.    As to the 2002–2003 tax years, plaintiff claims that September 26, 2010—and not July 15, 2007—was the correct "applicable date" from which the LCU interest should have begun to accrue. Compl., Exs. A–B.[8]    In the attached narratives, plaintiff describes the Form 5278, dated August 27, 2010, as "explain[ing] how the adjustments to partnership items would flow through to and impact GMI's tax liability."    Compl., Ex. A at 2, Ex. B at 6; see supra Part I.B.2.    Plaintiff asserts that the Form 5278 dated August 27, 2010 represented "the first notice it received upon the conclusion of the partnership proceedings that notified GMI of an assessment of tax attributable to partnership items."    Compl., Ex. A at 2, Ex. B at 6.    Thus, plaintiff argues, the LCU interest should not have begun to accrue until September 26, 2010, the thirtieth day after receipt of that Form 5278.    Compl. ¶ 18, 58, 75; Compl., Exs. A–B.

Reasoning that "any purported notice of a proposed assessment of tax or of an actual assessment of tax can only be made after the partnership proceedings have been completed," plaintiff contends that notice could not have issued on June 15, 2007 because the partnership proceedings had not been completed by that date.    Compl., Ex. A at 3, Ex. B at 7.    Applying the same reasoning to the 2004–2006 tax years, plaintiff claims that April 3, 2011—and not May 29, 2009—was the correct "applicable date" from which the accrual of LCU interest should have begun to run.    Compl. ¶ 35, 92, 109, 126;

---

[8]    The attached narratives filed for the 2002–2003 tax years are identical except for the amount sought in refund.    Compl., Exs. A–B.

Compl., Exs. D–F.[9]

On July 15, 2013, the IRS denied plaintiff's claims for refund and abatement of the LCU interest.   Compl. ¶ 25, 44; Compl., Exs. C, G.

### E.   Procedural History

On January 30, 2014, plaintiff filed a complaint in this court.   See generally Compl.   The case was assigned to Judge Francis M. Allegra.   ECF No. 3.   On May 30, 2014, defendant filed its answer.   ECF No. 9.   Approximately three months later, on September 9, 2014, defendant filed a motion to dismiss pursuant to Rule 12(b)(1).   Def.'s Mot. 12.   Plaintiff filed a response on October 31, 2014 (Pl.'s Resp.), ECF No. 15, and defendant filed its reply on December 18, 2014 (Def.'s Reply), ECF No. 17.   On June 12, 2015, this case was transferred to the docket of the undersigned.   ECF No. 20. Oral argument was heard on September 10, 2015.

## II.   Legal Standards for Subject-Matter Jurisdiction

"Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte."   Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004). When considering a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction, the court accepts as true the undisputed allegations in the complaint and draws all reasonable inferences in favor of the plaintiff.   Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).   The plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence.   Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).   A dismissal under Rule 12(b)(1) "is warranted when, assuming the truth of all allegations, jurisdiction over the subject matter is lacking."   Arakaki v. United States, 62 Fed. Cl. 244, 247 (2004) (internal quotation marks omitted).   Should the court determine that it does not have jurisdiction, it must dismiss the claim.   RCFC 12(h)(3).

This court has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department."   28 U.S.C. § 1491(a)(1).   This jurisdiction extends to tax refund suits such as plaintiff has filed here.   See Ferguson v. United States, 118 Fed. Cl. 762, 763 (2014); Hinck v. United States, 64 Fed. Cl. 71, 76 (2005), aff'd, 446 F.3d 1307 (Fed. Cir. 2006), aff'd, 550 U.S. 501 (2007).   A tax refund suit cannot be filed "until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard."   § 7422(a).   Thus, if an administrative refund claim has not been filed within the time limit prescribed by the tax code, this court is without jurisdiction to hear the tax refund action.   See McNaughton, 118 Fed. Cl. at 279.

---

[9]   The attached narratives filed for the 2004–2006 tax years are substantially similar. Compl., Exs. D–F.

### III.    Discussion

At issue in defendant's motion to dismiss is whether plaintiff filed its administrative claims within the appropriate time period.    Section 6511(a) of the tax code, which sets forth the general tax refund claim period, requires a taxpayer to file a claim within two years of paying the tax.[10]    § 6511(a).    That plaintiff timely filed its claim within this two year period is undisputed.    Defendant contends, however, that section 6511(a) does not define the limitations period in this case; rather, defendant asserts, plaintiff's claims were subject to a special six-month limitations period, as described in section 6230(c).    Def.'s Mot. 1–2, 29.

Should section 6511(a) apply to the facts of this case, plaintiff has filed its complaint within the limitations period, and this court has jurisdiction.    But, if section 6230(c) applies, then plaintiff has filed its claims out of time, and this court does not have jurisdiction.    By defendant's motion, the court is asked to determine whether the limitations period prescribed in section 6230(c) applies.

Section 6230(c) states that "[a] partner may file a claim for refund on the grounds that . . . the Secretary erroneously computed any computational adjustment necessary . . . to apply to the partner a settlement."    § 6230(c)(1)(A)(ii).    Section 6230(c) further states that any such claim "shall be filed within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner."    § 6230(c)(2)(A).

Defendant contends that section 6230(c) was triggered by plaintiff's claim that the IRS used an incorrect applicable date to start the accrual of LCU interest and thus miscalculated the amount of LCU interest due.    Def.'s Mot. 24–26.    Defendant describes plaintiff's complaint as a claim that the IRS "erroneously computed a 'computational adjustment.'"    Def.'s Mot. 2.

Determining whether this court has jurisdiction over plaintiff's claim requires a two-step inquiry.    First, the court must determine whether plaintiff's claim falls under section 6230(c).    Second, even if the claim appears to fall under section 6230(c), the court must determine whether section 6511(a) also applies.

---

[10]    Section 6511(a) states, in relevant part:

> Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

### A.      Plaintiff's Claims Fall Within Section 6230(c)

#### 1.      Large Corporate Underpayment Interest Is a "Computational Adjustment" that Is Directly Assessed

Section 6230(c) applies to computational adjustments.   A "computational adjustment" is "the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item."[11]   § 6231(a)(6).   Once adjustments to partnership items become final, either through a unified partnership proceeding or by settlement, the IRS can make "computational adjustments" to the tax liability of individual partners based upon adjustments to the partnership items.   Id.; Woods, 134 S. Ct. at 563; see AD Global Fund, LLC v. United States, 481 F.3d 1351, 1355 (Fed. Cir. 2007) (finding the TEFRA scheme "intends that adjustments to a partnership tax return be completed in one consistent proceeding before individual partners are assessed for partnership items").   The IRS does so by "comput[ing] the effect of any adjustments to the partnership items on the tax liability of each partner, mail[ing a] notice of the computational adjustment to each partner, and assess[ing] and collect[ing] the resulting additional tax liability of each partner as a computational adjustment."   5 Casey Fed. Tax Prac. § 16.10 (May 2015).

A computational adjustment may be applied to a partner in one of two ways:   (1) by deficiency proceedings, or (2) by direct assessment.   See § 6230(a)(1)–(2); Treas. Reg. § 301.6231(a)(6)-1(a); Woods, 134 S. Ct. at 563.   "Most computational adjustments [can] be assessed directly against the partners" with no need for deficiency proceedings, and in such circumstances "the partners [may] challenge the assessments only in post-payment refund actions."   Woods, 134 S. Ct. at 563; see §§ 6230(a)(1), (c).

Defendant asserts that plaintiff's LCU interest was a computational adjustment that the IRS assessed directly.   Def.'s Mot. 24.   Defendant suggests, and the court agrees, that the question of whether LCU interest is a computational adjustment amenable to direct assessment is a matter of statutory and regulatory interpretation.   See id. at 17–20; Def.'s Reply 16–17.

Defendant outlines its legal position by pointing first to Treasury Regulation section 301.6231(a)(6)-1(b), which states:   "[a] computational adjustment includes any

---

[11]     A partnership item is "any item required to be taken into account for the partnership's taxable year . . . to the extent regulations prescribed by the Secretary provide that, . . . such item is more appropriately determined at the partnership level than at the partner level."   § 6231(a)(3).   In other words, these are items "relevant to the partnership as a whole."   Woods v. United States, 134 S. Ct. 557, 563 (2013); see Bush v. United States, 655 F.3d 1323, 1325 (Fed. Cir. 2011) (referring to partnership items as "items whose treatment affects the entire partnership").

interest due with respect to any underpayment or overpayment of tax attributable to adjustments to reflect properly the treatment of partnership items." Treas. Reg. § 301.6231(a)(6)-1(b) (emphasis added); see Olson, 172 F.3d at 1318 (finding that interest is a computational adjustment pursuant to Temp. Treas. Reg. § 301.6231(a)(6)-1T(b)). This regulation, defendant asserts, applies to all forms of interest, including LCU interest. Def.'s Reply 17.

Plaintiff disagrees, reasoning that LCU interest is a distinctive type of interest. Pl.'s Resp. 18–19. Plaintiff contends that computing ordinary interest involves only a straightforward calculation and is a "pure math question." Id. at 18. But LCU interest requires more; it requires determinations about the notice of proposed deficiency—such as when it issued and whether it issued properly. Id. at 18–20. Yet, at oral argument, plaintiff acknowledged that the "applicable date [for the calculations of LCU interest] . . . . could . . . [be] adjusted [by] computational adjustment because . . . the ultimate interest resulting from . . . [an] affected item determination [c]ould be directly assessed and [is] not subject to deficiency procedures." Tr. 50:23–51:6.

The regulation that pertains to computational adjustments as applied to partners addresses: "any interest due with respect to any underpayment." Treas. Reg. § 301.6231(a)(6)-1(b) (emphasis added). Here, the court pauses to consider this regulatory language. It is well settled that "[w]hen construing a regulation or statute, it is appropriate first to examine the regulatory language itself to determine its plain meaning . . . . [and] if the regulatory language is clear and unambiguous, the inquiry ends with the plain meaning." Roberto v. Dep't of the Navy, 440 F.3d 1341, 1350 (Fed. Cir. 2006); see also Tesoro Haw. Corp. v. United States, 405 F.3d 1339, 1346–47 (Fed. Cir. 2005); Precise Sys., Inc. v. United States, 120 Fed. Cl. 586, 599 (2015). The term "any" is defined as "one indifferently out of more than two : one or some indiscriminately of whatever kind." Webster's Third New International Dictionary 97 (3d ed. 2002). That "any" is the modifier for both "interest" and "underpayment" in this regulatory provision makes clear that no interest attributable to an underpayment is to be excluded from its reach. Plaintiff's contrary assertion does not persuade otherwise.

Defendant acknowledges that more is needed than the regulatory characterization of interest as a computational adjustment for section 6230(c) to apply. Def.'s Mot. 20. Defendant asserts that the regulatory characterization of interest and a careful reading of several of the tax code provisions determine how LCU interest is to be treated here. See id. Before further considering defendant's argument, however, the court sets forth the statutory provisions on which defendant relies, for ease of reference.

Section 6230(a) of Subchapter C states, in relevant part:

(1) In general.—Except as provided in paragraph (2) or (3), subchapter B of

this chapter [12] shall not apply to the assessment or collection of any computational adjustment.

(2) Deficiency proceedings to apply [to computational adjustments] in certain cases.—

(A) Subchapter B shall apply to any deficiency attributable to—

(i) affected items which require partner level determinations (other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items), or

(ii) items which have become nonpartnership items (other than by reason of section 6231(b)(1)(C) [settlement between the IRS and a partner]) and are described in section 6231(e)(1)(B).

§ 6230(a) (footnote added).   Next, section 6211(a) of Subchapter B states, in pertinent part,

For purposes of this title in the case of income, estate, and gift taxes . . . and excise taxes . . . the term "deficiency" means the amount by which the tax imposed . . . exceeds the excess of [the sum of the amount of tax by the taxpayer on his return plus the amounts previously assessed . . . as a deficiency over the amount of rebates].

§ 6211(a).   Finally, section 6601 discusses the imposition of "[i]nterest on underpayment . . . of tax."   Subpart (e)(1) of section 6601 states:

Interest prescribed under this section on any tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes.   Any reference in this title (except subchapter B of chapter 63 relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.

§ 6601(e)(1).   That is, except as otherwise provided in the title, interest is to be treated as tax.

Defendant argues the following:   Section 6230(a)(1) exempts from deficiency procedures the assessment and collection of interest unless section 6230(a)(2) applies.

---

[12]     Subchapter B includes sections 6211–6216, which discuss the definition of a deficiency in addition to other aspects of deficiencies.   Subchapter C is comprised of sections 6221–6234.

Def.'s Mot. 18.   It is undisputed that section 6230(a)(2)(A)(ii) does not apply here because a settlement has taken place.

Defendant then asserts that section 6230(a)(2)(A)(i) does not apply either.   Id. This is because section 6230(a)(2)(A) states that "Subchapter B shall apply to any deficiency."   As defendant observes, section 6211(a) of Subchapter B defines the term "deficiency" as an amount of tax.   Further, section 6601(e)(1) provides that any reference to tax in the tax code also refers to interest, "except [in] subchapter B . . . relating to deficiency procedures."   See id. (emphasis added).   Therefore, as defendant reasons, interest is not a component of a "deficiency," and it follows that section 6230(a)(2)(A)(i) cannot apply to interest.   See id.   Because section 6230(a)(2)(A)(i) cannot apply to interest, interest must be a directly assessed computational adjustment. See id. at 18–19.   In other words, "it is the regulatory classification [of interest as a computational adjustment] plus [the] statutory exclusion of interest from the meaning of 'deficiency' in section 6230(a)(2) that exempts interest from deficiency procedures and mandates its direct assessment."   Id. at 20.

Although this court has not squarely addressed this statutory construction argument, other courts have.   Reasoning as defendant has here, the United States Tax Court (Tax Court) has held that LCU interest is not a deficiency.   See Pen Coal Corp. v. Comm'r, 107 T.C. 249 (1996).   The Tax Court found relevant an earlier decision, White v. Commissioner, 95 T.C. 209 (1990), which addressed tax-motivated transaction (TMT) interest involving former section 6621(c).   The Tax Court wrote:   "In granting the Commissioner's motion to dismiss in White, we first held, based upon a combined reading of sections 6211(a), 6230(a), and 6601(e)(1), that interest computed at the increased rate prescribed in former section 6621(c)(1) is not a deficiency within the meaning of section 6211(a)."   Pen Coal Corp., 107 T.C. 249 (1996).   The Tax Court observed that although TMT interest and LCU interest cover different subject matter, the "operative principle common to both provisions is the imposition of statutory interest at an increased rate."   Id.   Neither the parties nor the court has identified any district court or appellate court decisions involving a statutory analysis of LCU interest.   But, a few courts of appeal have analyzed this statutory scheme as it relates to TMT interest and have reached the same conclusion as the Tax Court—that section 6230(a) does not apply to interest attributable to a tax underpayment because a "deficiency," as contemplated by the tax code, does not include "interest."   See Field v. United States, 381 F.3d 109, 113 (2d Cir. 2004) (agreeing with the Tax Court that "section 6621(c) interest is exempt from deficiency proceedings altogether by virtue of section 6601(e)"); Barlow v. Comm'r, 301 F.3d 714, 722 (6th Cir. 2002) (finding that the IRS is authorized to assess and collect TMT interest without first issuing a notice of deficiency asserting the taxpayer's liability for the interest); Zfass v. C.I.R., 118 F.3d 184, 192 (4th Cir. 1997) (agreeing with the Tax Court that interest is not a deficiency).

Finding the foregoing statutory and regulatory interpretation to be highly persuasive, the court determines that LCU interest is a directly assessed computational

adjustment.

> **2.      A Claim that the IRS Imputed an Incorrect "Applicable Date" to Determine When Interest Began to Accrue Is a Claim that the IRS "Erroneously Computed" LCU Interest**

The court now considers whether plaintiff has effectively claimed that the IRS "erroneously computed" its LCU interest.    Section 6230(c)(1)(A)(ii) governs taxpayer claims that the IRS "erroneously computed any computational adjustment necessary to apply to the partner a settlement."    Here, plaintiff claims that the IRS computed plaintiff's LCU interest using the wrong start date.    Compl. ¶¶ 59–61, 76–78, 93–95, 110–112, 127–129.    Plaintiff specifically alleges in its complaint that the "IRS miscalculated the applicable date" and "erroneously applied" it for each of the tax years at issue.    Compl. ¶¶ 60–61, 77–78, 94–95, 111–112, 128–129.

Defendant argues that plaintiff's claim may be construed as an assertion that the IRS "erroneously computed" a computational adjustment.    Def.'s Mot. 25; Def.'s Reply 18–19; cf. § 6230(c)(1)(A)(ii).    Defendant further argues that the statutory phrase "erroneously computed" covers more than just mathematical or clerical errors; it extends to the correctness of the variables used in the computation formula.    Def.'s Mot. 21–22.

Plaintiff asserts that defendant has "mischaracterize[d] [its] claims for refund of LCU interest as a dispute over an erroneous computation to effect a settlement."    Pl.'s Resp. 7.    Plaintiff contends instead that it is challenging only the "applicable date" from which the IRS calculated the LCU interest.    Id. at 9.

The court discerns no mischaracterization by defendant.    The language in both plaintiff's complaint and in its administrative claims for the applicable tax years make clear that plaintiff is alleging that miscalculations occurred.    A comparison of section 6230(b) and section 6230(c) demonstrates that the statute itself distinguishes between mere arithmetic or clerical mistakes and erroneous computations.    Compare § 6230(b) (pertaining to "[m]athematical and clerical errors appearing on partnership return[s]"), with § 6230(c) (pertaining to "[c]laims arising out of erroneous computations"); see Acute Care Specialists II v. United States, 727 F.3d 802, 813 (7th Cir. 2013) (finding that "erroneously computed any computational adjustment" refers to more than mere math errors).    The court finds plaintiff's claim that the IRS used an incorrect variable in its LCU interest computation to be a complaint that the IRS erroneously computed the amount of LCU interest.

> **3.      LCU Interest was "Necessary to Apply to the Partner a Settlement"**

Whether LCU interest was "necessary to apply to the partner a settlement" is the third and final issue the court must consider in determining whether section 6230(c)

applies.   Plaintiff argues that because LCU interest was not expressly included in the settlement, section 6230(c)(1)(A)(ii) cannot apply.   Pl.'s Resp. 7–8.   Plaintiff reasons that the phrase "necessary to apply to the partner a settlement" requires the matter of interest to have been settled.   Id.   Plaintiff adds that the "applicable date" for the determination of LCU interest should have been settled as well.[13]   Id. at 9.

Defendant responds that a party and the IRS need not settle "every input necessary for subsequent partner level interest computations."   Def.'s Reply 8.   Because "interest is a post-partnership level computational adjustment," just as a tax underpayment is, such computations must follow the conclusion of partnership level-proceedings (which might be marked by a settlement).   Id.   In support of its position, defendant points to the parties' settlement agreement executed by a Form 870-AD(LT) on July 27, 2010 for the 2002–2003 tax years and another Form 870-AD(LT) on November 1, 2010 for the 2004–2006 tax years.   See id. at 9.   Both forms refer to the "interest provided by law," that will be assessed against plaintiff, in addition to the settled amount of tax deficiency. See, e.g., Def.'s Mot., Ex. 4 at 80–182, Ex. 9 at 203–05.   Defendant asserts that by signing the forms, plaintiff agreed to the terms of the settlement, which included the later assessment of interest.   See Def.'s Reply 9.

The executed forms provided that the IRS could assess "any interest."   Def.'s Mot., Ex. 4 at 80–182, Ex. 9 at 203–05.   Although the amount of interest to be assessed was not detailed in the settlement agreements, the tax code prescribes the amount of interest that applies for a large corporate underpayment and the applicable date for determining interest accrual.   Defendant insists—and the court agrees—that because interest was clearly contemplated as part of the settlement, the particulars regarding the amount of owed interest need not have been set forth in the executed forms.

Persuaded that plaintiff is effectively challenging the assessed LCU interest as "erroneously computed" by the IRS, the court finds that section 6230(c) applies to plaintiff's claims.

## B.   Defendant Provided Plaintiff with Sufficient Notice of the Computational Adjustments

In its briefing and during oral argument, plaintiff asseverated that even if section 6230(c) were to apply—as the court has determined it does—the notices it received were not sufficient to trigger the six-month limitations period.   Pl.'s Reply 8; see, e.g., Tr. 32:9–20.

---

[13]   Plaintiff points to the December 1, 2011 Form 870-AD as evidence that the issue of LCU interest and the "applicable date" for its determination had not been settled. Pl.'s Resp. 9; see Pl.'s Resp., App. 1.

16

Maintaining that a notice of computational adjustment sufficient to trigger the running of the six-month limitations period may take different forms, defendant contends that the notices in this case were adequate.   See Def.'s Mot. 22.   Defendant asserts that because the statute does not specify what form notice must take, the notices of computational adjustment plaintiff received need not have stated as much.[14]   See Def.'s Reply 4.   Defendant relies on Acute Care Specialists II v. United States for support. See id.; see also Def.'s Mot. 22.

In Acute Care Specialists II, the Seventh Circuit stated that "[t]o be considered adequate, a notice of deficiency must (i) 'advise the taxpayer that the IRS [has] determined that a deficiency exists for a particular year,' and (ii) 'specify the amount of the deficiency or provide the information necessary' to do so."   727 F.3d at 813 (quoting Murray v. Comm'r, 24 F.3d 901, 903 (7th Cir. 1994)).   The Seventh Circuit held that an IRS Form 4549A listing the amount of deficiency and the balance due (to include a statement of the "Underpayment Attributable [to] Tax Motivated Transactions"), was a valid notice of computational adjustment despite the fact that it was not explicitly titled as such.   Id.

Looking to Acute Care Specialists II, defendant proposes a standard for determining what sort of notice of computational adjustment is sufficient—while interest continues to accrue until it is paid and thus, cannot be fully computed.   See Def.'s Mot. 22.   Defendant suggests that the notice it provided is sufficient if it:   (1) "advises of the determination of a deficiency for a particular year," (2) "specifies the amount of the deficiency or provides the information necessary to do so," and (3) "states that interest will be computed and/or assessed (perhaps at a particular rate), even if the notice does not specify an amount of interest that is due."   Id.; Def.'s Reply 2.   Plaintiff offers no countervailing measure of sufficiency for the court to consider.   Instead, plaintiff urges the court to require that a notice of computational adjustment for LCU interest include: (1) an indication that it is a notice of computational adjustment that applies to LCU interest, (2) the amount of the LCU interest, (3) the rate of the LCU interest, (4) the "applicable date," and (5) a statement that the notice is a jurisdictional document.   Tr. 32:10–18, 34:13–19, 36:16–19.   The court turns to examine the facts at hand in light of the parties' competing positions.

## 1.    2002–2003 Tax Years

Defendant argues that under its proposed standard, the notice of computational adjustment mailed on August 27, 2010 was sufficient, as it advised plaintiff of the deficient tax amounts and indicated that the IRS would compute interest.   Def.'s Reply 2.   This notice was preceded by the June 15, 2007 notice of proposed deficiency

---

[14]    Throughout its complaint, plaintiff refers to the August 27, 2010 notice as a "notice of computational adjustment," even though the notice is not explicitly titled as such.   See Compl. ¶¶ 14–18, 20–24.

advising plaintiff that pursuant to section 6621(c), LCU interest would apply to those corporate taxpayers with tax deficiencies exceeding $100,000.   Def.'s Mot., Ex., 1 at 1.

Plaintiff acknowledges that section 6230(c) applies to erroneous computations and agrees that the August 27, 2010 notice was sufficient to commence a six-month limitations period for any erroneous computations that were contained in that notice. Pl.'s Resp. 3.   But, plaintiff contends, that notice "was inadequate . . . as to LCU interest" because the notice failed to either reference or compute LCU interest, and it did not identify the "applicable date" from which such interest would run.   Tr. 32:14–18. Plaintiff argues that without any mention of LCU interest, the received notice did not (and could not) contain any errors with respect to such interest.   Pl.'s Resp. 3–4; 7–8. Plaintiff reasons that because the IRS provided notice without an erroneous computation for plaintiff to dispute, the six-month limitations period could not have been triggered. Id. at 4.   Plaintiff's beguiling argument is unavailing.   As plaintiff acknowledged elsewhere in its briefing, interest is generally the type of item that is "implicit in a computation of tax with respect to settled items so that it need not be expressly computed or even identified in the notice of computational adjustment that applies to the settlement."[15]   Id. at 18.

Defendant contends in the alternative, that if the August 27, 2010 notice was insufficient, a subsequent mailing served as satisfactory notice and started the running of the six-month limitations period.   Def.'s Mot. 23 (citing Kercher v. United States, 539 Fed. App'x 517, 524 (5th Cir. 2013) and Duffie v. United States, 600 F.3d 362, 386 (5th Cir. 2010)).   Defendant specifically points to the interest computation schedules dated April 18, 2011 and April 20, 2011 that the IRS sent to plaintiff, as the notices that started the running of the six-month limitations period.   Def.'s Reply 2.   These interest computation schedules identified plaintiff's tax deficiencies and computed the amount of interest that had accrued since July 15, 2007.   Def.'s Mot. 26–27; see also supra Part I.B.3.   Plaintiff insists that the schedules could not have served as "notices" of computational adjustment because the schedules were mailed after plaintiff had paid the assessed LCU interest.   Pl.'s Resp. 10.   Plaintiff adds that the schedules made it difficult to determine which interest rates applied, because the schedules combined corporate and partnership adjustments and thereby did not provide sufficient notice.   Id. at 10–11.

### 2.    2004–2006 Tax Years

---

[15]    Plaintiff makes this observation as part of its argument that LCU interest (in contradistinction to ordinary interest) is not computational and thus, is not implicit in the computed tax detailed in the notice of computational adjustment.   Pl.'s Resp. 18–19. Because the court has found that LCU interest is a computational adjustment, see supra Part III.A.1, plaintiff's concession that interest typically is understood to be included in a tax computation lends support to a finding that similar to ordinary interest, LCU interest would have been contemplated in the notice of computational adjustment.

With respect to the 2004–2006 tax years, plaintiff contends that the IRS never sent a notice of computational adjustment.   Pl.'s Resp. 4.   Plaintiff describes the letter sent on March 4, 2011 as a "Final 30-Day Letter that . . . included a proposed deficiency . . . derived from a combination of partner-level deficiency adjustments and partnership nondeficiency adjustments."   Id.   Plaintiff notes that, similar to the notice of computational adjustment sent for the 2002–2003 tax years, this letter was silent as to the LCU accrual date, and it failed to mention that it triggered the running of the six-month limitations period.   Id. at 8, 10.

Defendant disagrees, asserting that the letter dated March 4, 2011—to which the IRS had attached a Form 4549A—was sufficient as a notice of computational adjustment. Def.'s Mot. 27; see also supra Part I.C.2.   Defendant reasons that the letter contained all of the information necessary for plaintiff to compute its LCU interest; in particular, it addressed "the exact amounts by which taxable income was increased as a result of the partnership item settlements, the exact adjustments to taxable income from matters unrelated to the settlements, and the exact amount of the deficiencies based on a computation that took into account both sets of adjustments."   Def.'s Mot. 27. Defendant argues in the alternative that if the March 4, 2011 notice was inadequate, plaintiff received sufficient notice when the IRS sent to plaintiff the interest computation schedule dated June 14, 2011.   Id. at 28.

Plaintiff counters that the schedule was deficient because it "conflated deficiency and nondeficiency assessments and payments."   Pl.'s Resp. 24 n.4.   Plaintiff adds that later-issued "defective" notices cannot cure the initial issuance of defective notices.   Id. (citing, inter alia, McGann v. United States, 76 Fed. Cl. 745, 758–61 (2007)).

### 3.   Analysis

The court now turns to evaluate the sufficiency of the IRS's notices, respectively dated August 27, 2010 and March 4, 2011.   The court recognizes that the August 27, 2010 notice did not contain the error about which plaintiff now complains.   And, the March 4, 2011 letter contained mixed calculations.

During oral argument, plaintiff urged the court to require notices that:   (1) indicated they were notices of computational adjustment; (2) specified the LCU interest rate and the amount of LCU interest due; (3) identified the "applicable date" from which LCU interest would begin to accrue; and (4) advised of the commencement of the six-month limitations period.   See Tr. 32:15–18, 34:13–21.   Nonetheless, even though the notices were not as neatly composed as plaintiff desires, plaintiff acknowledged the sufficiency of the August 27, 2010 notice—which was not labeled as a notice of computational adjustment and did not advise that a claim needed to be brought within six-months—to start the running of the six-month limitations period, just not for LCU interest.   Pl.'s Resp. 3.

The statute, however, does not support plaintiff's position as it does not require a particular title for the furnished notice, nor does it specify what must be included in the notice.   See Acute Care Specialists II, 727 F.3d at 813 (finding that an IRS Form 4549A sufficed as a notice of computational adjustment even though it did not state that it was such a notice).   Here, the court need not create notice requirements that neither Congress nor the IRS have established; an examination of the factual circumstances in this case is enough to decide the issue of notice sufficiency.

A review of the record indicates that by April 11, 2011, plaintiff had what it needed to ascertain and pay the LCU interest.   See Compl. ¶¶ 22, 40.   The notices of proposed deficiency, respectively dated June 15, 2007 and April 29, 2009, stated, "[i]f you are a 'C' Corporation, Section 6621(c) of the Internal Revenue Code provides that an interest rate 2% higher than the standard rate of interest will be charged on deficiencies of $100,000 or more."   Def.'s Mot., Ex. 1 at 1, Ex. 7 at 168.   The notices directed plaintiff to contact the IRS with any questions and furnished the name and telephone number of the contact person.   Id.

Then, on September 3, 2010 and May 9, 2011, respectively, plaintiff was assessed the LCU interest.   Pl.'s Notice 1–2; see also Pl.'s Resp. 21–22 ("GMI understood that the IRS was considering assessing LCU interest from those dates . . . .").   Plaintiff paid the assessed interest and now claims that the later-received notices from the IRS with the interest computation schedules could not serve as the notices sufficient under the statute to trigger the six-month limitations period.

Plaintiff received the interest computation schedules on April 18, 2011 and April 20, 2011 for the 2002–2003 tax years, and on June 14, 2011 for the 2004–2006 tax years. The schedules contained the relevant information plaintiff needed to calculate and pay its LCU interest.   See Def.'s Mot., Ex. 6 at 157–67, Ex. 11 at 382–86; see also Compl., Exs. A–B, D–F (indicating that the interest computation schedules included July 15, 2007 and May 29, 2009 as "the 'LCU Interest Date'").   The schedules also included information to contact the IRS with any questions.   Def.'s Mot., Ex. 6 at 165, Ex. 11 at 382.

The series of notices plaintiff received from the IRS between August 27, 2010 (notice of computational adjustment) and April 18, 2011 (notice of interest computation schedule) for the tax years 2002–2003, see supra Part I.B.2–3, and between March 4, 2011 (Final 30-Day letter) and June 14, 2011 (notice of interest computation schedule) for tax years 2004–2006, see supra Part I.C.2–3, kept plaintiff informed.   And prior to receiving the notices of interest computation schedules, plaintiff successfully had ascertained what it owed in LCU interest and had paid that amount.   Subsequently, when plaintiff did receive the detailed interest computation schedules, plaintiff was well aware of the IRS's computation of its LCU interest and the interest accrual dates the IRS had used.   Yet, even though the interest computation schedules contained information

for contacting the IRS with any questions plaintiff might have had, plaintiff nonetheless filed its claims challenging the assessment of the LCU interest on March 28, 2013, well beyond the six-month limitation period required by section 6230(c).

Because plaintiff relies heavily on the court's decision in McGann v. United States to support its position about the defectiveness of the notice it received, see Pl.'s Resp. 24 n.4; Tr. 37:12–38:2, 40:11–42:25, 43:3–6, the court addresses that case and distinguishes it from this circumstance.[16]   In McGann, the court found that the IRS failed to provide adequate notice of the computational adjustment as contemplated by section 6230(c)(2)(A).   76 Fed. Cl. at 761.   There, the IRS sent the taxpayers a Form 4549A delineating "the increase in tax as attributable [to TMT for which] TMT interest [would] accrue and be assessed at 120% of underpayment rate in accordance with IRC 6621(c) . . . . However, it also showed '0.00' as the amount of TMT [i]nterest-computed 03/22/2003 on TMT underpayment."   Id. at 748 (internal quotation marks and citations omitted) (some alterations in original).   At the same time, the IRS supplied a Form 886-A which stated that "all or part of the underpayment of tax . . . is a substantial understatement attributable to tax motivated transactions," but did not specify how much of the underpayment was due to TMTs.   Id. at 759.   The court determined that as "[v]iewed overall, [the] references [to interest in the Form 886-A did] not indicate that the IRS actually intended to apply the enhanced interest rate specified in former Section 6621(c)."   Id.   Because the information in the notice of computational adjustment provided to the taxpayers by the IRS was found to be misleading, the court concluded that the notice was insufficient for purposes of section 6230(c)(2)(A).   Id. at 760–61 (citing circuit and tax court cases discussing sufficiency of notices of deficiency).

Contrastingly, none of the notices sent by the IRS to plaintiff in this case were misleading or contradictory.   Although the IRS notices were not as neatly outlined as plaintiff desired, they did provide all of the necessary information for plaintiff to determine the amount of LCU interest owed, and plaintiff succeeded in paying the amount the IRS had calculated prior to its receipt of the notice of interest computation schedule.   Cf. Kercher, 539 Fed. App'x at 524 ("[T]he Kerchers had adequate notice of the additional taxes, including penalty interest, at least by the time they paid those taxes and interest in full.").   Because the record here strongly indicates that plaintiff had effective notice—in writing—of its calculated LCU interest, the court finds plaintiff's technical arguments about the insufficiency of the notices it received unavailing.

### 4.   December 1, 2011, Form 870-AD

As further support for its position that the IRS did not send proper computational adjustment notices, plaintiff points to the December 1, 2011 Form 870-AD it signed.

---

[16]   The McGann court denied defendant's motion to dismiss on grounds other than the adequacy of the notice of computational adjustment.   McGann v. United States, 76 Fed. Cl. 745, 758 (2007).

Pl.'s Resp. 4.   Form 870-AD is entitled "Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment."   Pl.'s Resp., App. 1. Plaintiff asserts that as executed, Form 870-AD "settled previously unagreed [upon] deficiency-proceeding items and included previously settled partnership and affected items, including items that had been the subject of the section 6230(c) notice of computational adjustment for 2002 and 2003, and the partnership items that were erroneously combined in the Final 30-Day Letter."   Pl.'s Resp. 4.   Plaintiff adds that the document "specifically provided that the GMI Group reserved the right to file a claim for a refund of interest . . . [which] evidences an agreement that contestable interest issues remained open."   Id. at 4; see also id. at 9.   Form 870-AD, in relevant part, states,

> Notwithstanding the provisions of this Form 870-AD, the Taxpayer reserves the right to timely file claims for refund or credit of federal income taxes, penalties, and interest, or prosecute timely filed refund or credit claims for federal income taxes, penalties, and interest solely on the following grounds: . . .

> 4. The Taxpayer reserves the right to challenge [i]nterest calculations made by the Service with respect to all years/periods covered by this.

Pl.'s Resp., App. 1.   Plaintiff argues that because the form states that the interest issues remain open, no notice of computational adjustment could have been mailed prior to the date the form was signed.   Pl.'s Resp. 4.

Form 870-AD only reserves plaintiff's right to "timely file claims . . . or prosecute timely filed refund . . . claims."   Pl.'s Resp., App. 1.   Although it does afford plaintiff "the right to challenge interest calculations," id., it does not extend the time period for filing refund claims or modify the statutory limitations period established by section 6230(c).   Thus, the court finds little support for plaintiff's position in the offered form. But even if the form were found to have started the running of the six-month limitations period as of December 31, 2011, the thirtieth day after December 1, 2011, plaintiff did not file its refund claims until well over a year later.

## C.   Section 6511(a) Does Not Apply

Plaintiff asserts not only that defendant provided insufficient notice to trigger section 6230(c)(2)(A), but also that section 6230(c) is not applicable.   See Pl.'s Resp. 12.   Plaintiff argues instead that the general refund period set forth in section 6511(a) applies.   Id.   The court finds differently.

### 1.   The Refund Scheme Outlined in Section 6230(c) Preempts the General Refund Scheme of Section 6511(a) Because Section 6230(c) Preempts that Statutory Provision

Defendant asserts that the general limitations period for refund claims, as set forth in section 6511(a) does not apply.   Def.'s Mot. 29–33; see Def.'s Reply 10.   As support for its position, defendant points to EC Term of Years Trust v. United States, in which the Supreme Court reiterated the long-held interpretational canon "that a precisely drawn, detailed statute pre-empts more general remedies."   550 U.S. 429, 433 (2007) (quoting Brown v. GSA, 425 U.S. 820, 834 (1976)).

In that case, the taxpayer challenged a levy placed by the IRS on its property.   Id. at 430.   At issue were the statutory sections 6532(c) and 7426(a)(1), which require the taxpayer to file an action within nine months of the date of the levy.   Id. at 431.   The taxpayer did not file its action until almost a year after the date of the levy, asserting that the general refund claim limitations period applied—as provided in sections 6532(a)(1)– (2), 7422(a), and 6511(a).[17]   Id. at 431 n.2.   Unable to "reconcile the 9-month limitations period for a wrongful levy claim under § 7426(a)(1) with the notion that the same challenge would be open under [the general refund claim period] for up to four years," the Supreme Court rejected the taxpayer's argument that would have allowed taxpayers to evade the shorter limitations period "thought essential to the Government's tax collection."   Id. at 434.   The Supreme Court affirmed the lower court's decision finding that the taxpayer had missed its deadline for challenging the levy.   Id. at 436.

Here, plaintiff argues that section 6230(c) is not a precisely drawn statute, but that sections 6511(a) and 6230(d)(6)[18] are.   Pl.'s Resp. 17.   Plaintiff focuses on how

---

[17]      "Title 28 U.S.C. § 1346(a)(1) gives district courts 'jurisdiction, concurrent with the United States Court of Federal Claims,' over '[a]ny civil action against the United States for the recovery of,' among other things, 'any internal-revenue tax alleged to have been erroneously or illegally assessed or collected.'   A taxpayer may bring such an action within two years after the IRS disallows the taxpayer's administrative refund claim.   See 26 U.S.C. §§ 6532(a)(1)-(2); see also § 7422(a) (requiring a taxpayer to file the administrative claim before seeking a refund in court).   An administrative refund claim must, in turn, be filed within two years from the date the tax was paid or three years from the time the tax return was filed, whichever is later.   See § 6511(a)."   EC Term of Years Trust v. United States, 550 U.S. 429, 431 n.2 (2007).

[18]      "Subchapter B of chapter 66 (Relating to limitations on credit or refund) shall not apply to any credit or refund of an overpayment attributable to a partnership item."   § 6230(d)(6).

sections 6511(g)[19] and 7422(h)[20] operate to "disengage the general statute [of limitations] periods found in 6511(a) and the general rules [found] in 7422(a)" for refunds attributable to partnership items, Tr. 46:18–19, and reads sections 6511(g) and 6230(d)(6) to draw a "precise boundary between" sections 6511(a) and 6230(c)(2)(A), to limit the scope of section 6511(a), Pl.'s Resp. 17.   Plaintiff interprets the statutes to disengage the general limitations periods "only when a claim is attributable to a partnership item."   Tr. 47:6–8; see infra III.C.2.   Plaintiff does not address the later Supreme Court cases to which defendant cites, but cites to an earlier case from this court discussing the canon of construction whereby the "specific governs the general."   Pl.'s Resp. 17 (citing Grossman v. United States, 57 Fed. Cl. 319, 324 (2003), aff'd, 95 Fed. App'x 356 (Fed. Cir. 2004) describing the canon as involving two steps, "first, a determination that there is an irreconcilable conflict and then the resolution of such a conflict in favor of the specific over the general").

The principle is well-established "that, in most contexts, 'a precisely drawn, detailed statute pre-empts more general remedies.'"   Hinck, 550 U.S. at 506 (quoting EC Term of Years Trust, 550 U.S. at 434); see also Block v. North Dakota ex rel. Board of Univ. & School Lands, 461 U.S. 273, 285 (1983).   Notwithstanding plaintiff's assertion to the contrary, section 6230(c) is a specifically drawn statute.   It addresses three specific types of claims (including an erroneous computation of a computational adjustment).   It includes a specific limitation periods, and it contains a specific standard of review.   § 6230(c).   Plaintiff's claim that the general statutory periods are disengaged "only when a claim is attributable to a partnership item," is not consistent with a careful reading of the statutes.   Neither section 7422(h) nor 6511(g) indicate that refunds attributable to partnership items are the only instances in which section 6230(c) applies.   See §§ 6511(g), 7422(h).   Rather, the two statutory sections state that they must apply for claims with respect to partnership items.   See id.   Because section 6230(c) provides a mechanism for taxpayers to file specific claims such as plaintiff asserts here, plaintiff cannot evade the prescribed shorter limitations period to avail itself of the general refund claim period of section 6511(a).

### 2.   Whether Plaintiff's Claim for Refund Is Attributable to a Partnership Item Is Irrelevant

---

[19]   "Special rule for claims with respect to partnership items.--In the case of any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (as defined in section 6231(a)(3)), the provisions of section 6227 and subsections (c) and (d) of section 6230 shall apply in lieu of the provisions of this subchapter."   § 6511(g).

[20]   "Special rule for actions with respect to partnership items.--No action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c)."   § 7422(h).

For the sake of completeness, the court also addresses plaintiff's argument that the general refund limitations period set forth in section 6511(a) applies here because its claim for refund is not attributable to a partnership item.   Pl.'s Resp. 12.   Plaintiff contends that neither section 7422(h) nor section 6511(g) apply, because:   (1) the "applicable date" is not a partnership item nor attributable to a partnership item, and (2) plaintiff's partnership items converted to nonpartnership items upon settlement.   Pl.'s Resp. 13–16; Tr. 31:18–25; see also supra Part III.C.1.

Plaintiff makes the nuanced argument that it is not "interest" as a whole that is at issue here, but the various components that comprise an interest computation, and "depend entirely on partner-specific facts."   Pl.'s Resp. 13.   An example of such component, according to plaintiff, is the date on which the first notice of proposed deficiency was sent to the partner to determine the "applicable date" for the limitations period to start running.   Id. at 12–13.   Because the IRS must determine the date that is specific to a partner, and not to the partnership as a whole, plaintiff asserts that the "applicable date" is not a partnership item.

Plaintiff further asserts that the "applicable date" is not attributable to partnership items within the meaning of section 6511(g).   See id. at 14–15.   Plaintiff relies on Prochorenko v. United States, 243 F.3d 1359 (Fed. Cir. 2001), as support.   In Prochorenko, the Federal Circuit concluded that the taxpayers "[were] not entitled to reduce their partnership tax liability based on the statutory right to a consistent settlement of 'partnership items' . . . ."   Prochorenko v. United States, 243 F.3d 1359, 1360 (Fed. Cir. 2001).   The Federal Circuit found that "[t]he facts needed to determine whether consistent terms were offered are facts about the partner, not facts about the partnership." Prochorenko, 243 F.3d at 1363 (quoting Monti v. United States, 223 F.3d 76, 83 (2d Cir. 2000)).   The court also found that "[c]onstruing the phrase 'attributable to partnership items' so broadly as to cover claims that depend on the unique circumstances of an individual partner . . . would be contrary to the system of separate treatment of partnership items and nonpartnership items established by Congress in enacting TEFRA." Id.   Plaintiff points to Prochorenko to bolster its view that the "applicable date on which LCU interest commences to accrue" cannot be attributable to any partnership item, because the "applicable date . . . is determined entirely by partner-level facts having nothing whatsoever to do with the partnership-level proceeding."   Pl.'s Resp. 15. Plaintiff concedes that "at most" the LCU interest components are "affected items" because the "interest applies to an underpayment resulting from adjustments to partnership items."   Id. at 13–14.

Plaintiff adds that it may avail itself of the general refund period because upon settlement, all of plaintiff's settled partnership items converted to nonpartnership items. Id. at 15–16.   As the Federal Circuit has stated, "[i]n certain instances, partnership items 'cease to be partnership items' and become nonpartnership items, such as . . . when the Secretary enters into a settlement agreement with the partner with respect to such items."

Bush 717 F.3d at 925 (quoting § 6231(b)); see also Olson, 172 F.3d at 1317 ("By settling with the IRS, the settling partner's 'partnership items' become 'non-partnership items.'"). Therefore, upon the conversion of partnership items to nonpartnership items, LCU interest would no longer be attributable to partnership items.   See Pl.'s Resp. 15–16. As a result, section 6511(g) would not apply, and the general limitations period in section 6511(a) would become applicable.   See Tr. 31:22–32:4.

Defendant, however, has a different view.   Defendant challenges plaintiff's effort to divide LCU interest into component parts, and plaintiff's refusal to attribute LCU interest to partnership items.   Def.'s Reply 12–13.   As the Federal Circuit has explained, "[a] tax item is 'attributable to' a partnership item if it is 'due to, caused by, or generated by,' a partnership item.   Bush, 717 F.3d at 925 (quoting Keener v. United States, 551 F.3d 1358, 1365 (Fed Cir. 2009)).   Defendant contends that "[w]ithout an underpayment caused by partnership items, there [would] be no interest [due], because an underpayment is an integral part of every interest computation."   Def.'s Reply 12. Pointing to plaintiff's concession that LCU interest qualifies as an affected item, defendant asserts that plaintiff's claim is attributable to partnership items.   Id. 11–13; cf. Pl.'s Resp. 13 ("LCU interest, computed from an applicable date, is an affected item because the interest applies to an underpayment resulting from adjustments to partnership items . . . .").   "[A]ffected items" are "items that are affected by (but are not themselves) partnership items."   Woods, 134 S. Ct. at 563; see also § 6231(a)(5) ("The term 'affected item' means any item to the extent such item is affected by a partnership item.").

At issue in this motion to dismiss is the allegedly erroneous computation of LCU interest.   While plaintiff seeks to peg the erroneous computation to an incorrect "applicable date" only, it is the amount of LCU interest assessed as a result of a partnership underpayment that plaintiff challenges.   Nonetheless, even if plaintiff were correct that the "applicable date" is not attributable to partnership items, sections 6511(g) and 7422(h) are silent with respect to claims that are not attributable to partnership items. And yet, these two statutory provisions do not expressly exclude such claims from the reach of section 6230(c).   Rather, they make clear that claims attributable to partnership items are governed by section 6230(c).

Section 6230(c) applies in this case, and it preempts the general refund period outlined in section 6511(a).

## D.   Plaintiff's Policy Argument

Plaintiff asserts that if defendant were to succeed here, taxpayer abuse might occur.   Pl.'s Resp. 24–25.   Plaintiff suggests that the IRS might exploit the statutory scheme by issuing a notice of computational adjustment with no mention of LCU interest, waiting six months, and then assessing LCU interest.   Id. at 25.   This course of conduct would render late any claim plaintiff subsequently would file.   See id.   Defendant

responds that plaintiff has expressed concern about a circumstance other than what occurred in this case.   Def.'s Reply 19–20; see Olson, 172 F.3d at 1318–19 (noting that it is not the court's role "to offer advisory opinions on hypothetical cases or controversies").

The court agrees with defendant.   Here, the IRS assessed LCU interest within six-months of sending notice to plaintiff.[21]   This is the scheme established by Congress. Policy arguments for a different scheme are best directed to Congress, not the court.[22]

## IV.   Conclusion

For the foregoing reasons, the court finds that because plaintiff challenges the computation of LCU interest—a directly assessed computational adjustment—section 6230(c) applies to plaintiff's claim.   The court also finds that the IRS provided plaintiff with satisfactory notices of computational adjustment pursuant to section 6230(c)(2)(A). Finally, the court finds that the six-month limitations period found in section 6230(c) preempts the two year general limitations period outlined in section 6511(a).   As plaintiff failed to file its administrative claims within the six-month limitations period as prescribed by section 6230(c)(2)(A), plaintiff filed its claims out of time.

Thus, the court finds that it lacks jurisdiction over the claims in plaintiff's original complaint filed January 30, 2014.   Defendant's motion to dismiss is **GRANTED**.   The following paragraphs within each count of plaintiff's first amended complaint,[23]   filed August 3, 2015, ECF No. 22, are **DISMISSED**:   (1) paragraphs 67–82 of Count 1; (2) paragraphs 96-112 of Count 2 (Count 2 in its entirety); (3) paragraphs 114–129 of Count 3; (4) paragraphs 134–149 of Count 4; and (5) paragraphs 155–170 of Count 5.

---

[21]   The notice of computational adjustment for the 2002–2003 tax years was sent on August 27, 2010.   Compl. ¶ 14; Def.'s Mot., Ex. 5.   The taxes and interest for those years were assessed on September 3, 2010.   Pl.'s Notice 1–2.   For the 2004–2006 tax years, the notice of proposed deficiency was sent on March 4, 2011, Compl. ¶ 31; Def.'s Mot., Ex. 10 at 301, and the assessment was made on May 9, 2011, Pl.'s Notice 1–2.

[22]   At oral argument, defendant noted that the merits of tax liability were addressed over the course of years, during the partnership-level proceeding.   The outstanding interest computation challenge does not pertain to those merits, and thus does not need an extended limitations period.   See Tr. 27:23–28:7.

[23]   Defendant's motion to dismiss was fully briefed on December 18, 2014, prior to the filing of plaintiff's first amended complaint.   For that reason, the citations in this opinion follow the practice of the parties' briefing and reference the original complaint.

As plaintiff raised two additional claims in its first amended complaint, the parties shall file a joint preliminary status report addressing the interest netting and competent authority claims on or before **Friday, November 6, 2015**.

IT IS SO ORDERED.

s/ Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Chief Judge